UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WACO FUNCTIONAL MEDICINE, P.A. D/B/A BRAZOS INTEGRATIVE MEDICINE AND LISA KIRK, D.O. | § § § § | CASE NO. 2:17-CV-01208 |
| | § | SECTION N |
| | § | Judge Kurt D. Englehardt |
| v. | § | |
| | § | MAGISTRATE 4 |
| HEARTWISE CLINIC, LLC | § § | Mag. Judge Karen Wells Roby |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(B)(1) AND/OR 12(B)(6) OR, ALTERNATIVELY, STAY PROCEEDINGS AND COMPEL ARBITRATION**

**MAY IT PLEASE THE COURT:**

Defendant Heartwise, LLC ("Heartwise") and files this Brief in Support of its Motion to Dismiss Plaintiff's Claims with Prejudice Pursuant to FED. R. CIV. P. 12(b)(1) and/or 12(B)(6), or, Alternatively, Stay Proceedings and Compel Arbitration (the "Motion") regarding the claims made by Waco Functional Medicine, P.A. d/b/a Brazos Integrative Medicine and Dr. Lisa Kirk (collectively, "Waco"), and in support thereof would respectfully show the Court the following:

**I. SUMMARY OF ARGUMENT**

This Court should compel Waco to submit its challenges to the underlying License & Management Agreement (the "Agreement") to arbitration for determination because Waco's arguments and factual allegations seek to attack the validity of the Agreement ***as a whole***, and not just the arbitration provision that it contains. Consequently, this Court is bound by the Federal Arbitration Act ("FAA"), as well as established Supreme Court precedent, to abstain

from determining Waco's claims.[1] Similarly, the Court should also defer to the American Arbitration Association ("AAA") to effectively govern its own arbitration proceedings. Waco's request that the Court mandate the procedure by which an arbitration proceeding is conducted by entering an order declaring Waco to be entitled to a separate arbitration proceeding fails as a matter of law. Such procedural concerns, like Waco's other claims attacking the Agreement, must be left for the arbitrator to decide.[2] As a result, the Court must abstain from ruling on all of Waco's claims and should dismiss them with prejudice to refiling in the interest of judicial economy.[3]

## II. EVIDENTIARY BASIS OF MOTION

1. This Motion is based upon Waco's Complaint for Declaratory Judgment [Doc. # 1] in addition to the following:

   a. License & Management Agreement, a true and correct copy of which is attached hereto as Exhibit "A."

   b. The Original Petition filed by Waco and several other doctors in the 353rd Judicial District Court, a true and correct copy of which is attached hereto as Exhibit "B."

---

[1] *See* 9 U.S.C. § 3; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010); *Preston v. Ferrer*, 552 U.S. 346, (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

[2] *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) ("Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753–54 (5th Cir.1995) (finding that a party's claim that arbitration was time-barred was a proper dispute regarding arbitration procedure for the arbitrator where rules regarding timeliness were incorporated into the agreement to arbitrate and the parties agreed to have any dispute between them resolved by arbitration) (other citations omitted)).

[3] *Rent-A-Ctr., W., Inc.*, 561 U.S. at 75 (reversing in favor of upholding the trial court's dismissal); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1165 (5th Cir. 1992) (stating that dismissal, as opposed to a stay pending arbitration, is proper "when all of the issues raised in the district court must be submitted to arbitration"); *Aviles v. Russell Stover Candies, Inc.*, 559 Fed. Appx. 413, 415 (5th Cir. 2014) (mem. op.) (citing *Alford* to reach the same conclusion).

  c. The First Amended Petition filed by Waco and several other doctors in the 353rd Judicial District Court, a true and correct copy of which is attached hereto as Exhibit "C."

  d. The Docket Report for the 353rd Judicial District Court, a true and correct copy of which is attached hereto as Exhibit "D."

  e. The Second Amended Arbitration Petition, a true and correct copy of which is attached hereto as Exhibit "E."

### III. RELEVANT FACTS & PROCEDURAL BACKGROUND

Heartwise is in the business of developing, implementing, and assisting with the operation of cardiac-disease-prevention and wellness programs for use in all types of healthcare facilities known as the "Heartwise System."[4] On or about April 7, 2014, Heartwise entered into the Agreement with Waco, whereby Heartwise granted Waco a limited, nontransferable, non-assignable license to use the Heartwise System in exchange for monthly payments.[5] The Agreement contains the following provision (the "Arbitration Provision"):

> **13.4   Dispute Resolution.**
>
> Arbitration. (a) Except as specifically put forth in this Agreement in Section 13.4(b), the parties hereto agree that any dispute, disparagement or controversy between any party with respect to the validity, construction and enforcement of this Agreement that cannot be resolved by the parties shall promptly be submitted to the American Arbitration Association to be resolved by final and binding arbitration in accordance with their commercial arbitration rules. The place of arbitration shall be in the State of Louisiana. The arbitration tribunal shall be composed of three arbitrators who have sufficient experience in the matters at hand, one of whom shall be appointed by [Heartwise], one of whom shall be appointed by [Waco] and one of whom shall be appointed by such two arbitrators.[6]

---

[4] *See* Ex. A; Ex. E.
[5] *See* Ex. A.
[6] *Id.*

Waco subsequently breached the Agreement by: (1) failing to make all monthly payments due under the terms of the Agreement; (2) improperly exploiting Heartwise's proprietary and confidential information in violation of the Agreement's non-disclosure provision; (3) unlawfully competing with Heartwise by continuing to run several tests comprising the Heartwise System without Heartwise's consent and in violation of the Agreement's non-compete provision; and (4) improperly terminating the Agreement in a manner inconsistent with its terms.[7] Anticipating the imminent arbitration proceeding resulting from this unlawful conduct, Waco joined two other Heartwise clients: Drs. Manuel and Isabella Padilla and Dr. Jeffrey Rettig, and filed a first-strike lawsuit in the 353rd State District Court of Texas in Travis County, Texas on September 18, 2015 (the "Doctors' Suit").[8]

Waco, Drs. Padilla, and Dr. Rettig (collectively, the "Doctors") were all mutual clients of Katrina McDaniel ("McDaniel"), a medical biller who provides medical-coding and claim-submission services, and who had also contracted with Heartwise to perform sales-broker services. McDaniel used her medical billing clients as a ready market for selling Heartwise, such that when her clients contracted with Heartwise, McDaniel had extensive interaction with, and detailed knowledge of, both Heartwise's clients and the details of the Heartwise program as it operated in their clinics. Heartwise discovered numerous instances of fraudulent billing by McDaniel, terminated her services, and filed a lawsuit against her (the "McDaniel Suit").

Upon information and belief, the Doctors all unlawfully terminated their respective agreements with Heartwise in retaliation for Heartwise filing the McDaniel Suit. Regardless, Waco, Drs. Padilla, and Dr. Rettig, were all represented by Michael Donohue ("Donohue") of the law firm Friedman & Feiger, LLP (who also represents McDaniel in the McDaniel Suit) and

---

[7] *See* Ex. A; Ex. E.
[8] *See* Ex. B.

launched a coordinated joint attack on Heartwise in an attempt to avoid of their contractual obligations.[9] Heartwise thereafter initiated an arbitration proceeding against Drs. Padilla with the AAA, which is currently pending as Case Number 01-15-0003-8044 (the "Arbitration").[10] Donohue continued to represent Drs. Padilla in the Arbitration, as well as continuing to represent Dr. Kirk in the state-court lawsuit.[11] Donohue actively participated in the selection of the AAA panel in the Arbitration and made numerous objections and proposals regarding which arbitrators would be selected. Initial filings and disclosure of documents were made, but the Arbitration has otherwise made no substantive progress. In the meantime, the Doctors amended the Doctors' Suit, and Waco was removed as a plaintiff,[12] leading Heartwise to believe that an out-of-court resolution may be possible.

On May 20, 2016, Heartwise conducted the deposition of Dr. Kirk in the McDaniel Suit. From that deposition, it, became clear that Dr. Kirk intended to rely on the same claims and defenses asserted by Drs. Padilla. Accordingly, on November 18, 2016, Heartwise amended claims in the Arbitration to add its claims against Waco. Its goal in consolidating the arbitration proceedings to include Dr. Kirk in the pending Arbitration is simply to save the parties time and money. The AAA panel was selected with the participation of Waco's attorney, the AAA proceeding has not progressed to the extent that Waco's addition would cause undue prejudice to Waco,[13] and both the parties' attorneys' fees and arbitrators' fees will be substantially lower if the arbitrations are conducted together.

---

[9] *See* Ex. B.
[10] *See* Ex. E.
[11] *See* Ex. B; Ex. D.
[12] Waco never dismissed its claims against Heartwise through a nonsuit or other affirmative filing, and Heartwise disputes that Waco was effectively removed from the Doctors' lawsuit.
[13] No written discovery or depositions have been conducted in the Arbitration and no pre-hearing motions have been filed.

For nearly two months after the amendment of the Doctors' Suit, Donohue never indicated that he no longer represented Waco—and was still listed as its attorney of record in the state-court lawsuit[14]—nor did he indicate that he had not told Waco that it had been added to the Arbitration. However, when he did finally disclose this position, the AAA panel contacted Waco to advise that it had been added to the Arbitration. On February 10, 2017, only after being added to the Arbitration, Waco filed the instant lawsuit, seeking a judicial declaration that the Agreement, and accordingly the Arbitration Provision, is void and unenforceable due to allegations of fraud in the inducement, duress, and subsequent alteration.[15] Waco further seeks some sort of declaration that, in the event that the Court finds the Arbitration Provision enforceable, Waco should be entitled to a separate arbitration proceeding.[16]

### IV.  ARGUMENT & AUTHORITIES

#### A. WACO'S CLAIMS MUST BE DETERMINED BY AN ARBITRATOR AND NOT THE COURT.

This Court should dismiss this lawsuit and compel arbitration because Waco's arguments and factual allegations seek to attack the validity of the Agreement ***as a whole***, and not just the arbitration provision that it contains.  The United States Supreme Court has repeatedly recognized that the public policy of the United States favors arbitration.[17] The FAA governs commercial disputes, stemming from agreements containing an arbitration provision.[18] Specifically, Section 2 of the FAA provides as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof,

---

[14] *See* Ex. D.
[15] *See* Pl.'s Compl. For Declaratory Judgment [Doc. # 1], ¶¶39–41.
[16] *Id.* at ¶¶42–47.
[17] *Preston*, 552 U.S. at 353; *Buckeye Check Cashing, Inc.*, 546 U.S. at 443; *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).
[18] *See* 9 U.S.C. § 2.

> or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[19]

Section 1 of the FAA provides for its broad and sweeping application to virtually all business relations by defining "commerce" as follows:

> . . . . "[C]ommerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation . . . .[20]

Finally, Section 3 of the FAA directs courts to "stay"[21] all judicial action in an arbitrable case and compel the parties to submit their claims to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[22]

Despite the relatively clear and simple statutory scheme that these three sections appear to create, there has been significant judicial interpretation of them with respect to which claims should be submitted to arbitration and which claims may be decided by the courts. By virtue of its holdings in two published opinions, the United States Supreme Court provides clear

---

[19] *Id.*

[20] 9 U.S.C. § 1.

[21] Although the statute uses the term "stay," courts have consistently held that dismissal is proper when all issues should be submitted to arbitration. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 75 (reversing in favor of upholding the trial court's dismissal); *Alford*, 975 F.2d at 1165 (stating that dismissal, as opposed to a stay pending arbitration, is proper "when *all* of the issues raised in the district court must be submitted to arbitration"); *Aviles*, 559 Fed. Appx. at 415 (citing *Alford* to reach the same conclusion).

[22] 9 U.S.C. § 3.

instructions mandating that claims affecting the validity of the entire agreement—and not just the underlying arbitration provision—must be submitted to the arbitrator for determination.[23]

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, Prima Paint Corporation ("Prima Paint") had contracted with Flood & Conklin Manufacturing ("F&C") to act as its consultant, and the underlying Agreement contained the following arbitration provision:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association . . . .[24]

Prima Paint failed to pay F&C, and F&C initiated an arbitration proceeding.[25] Prima Paint filed a lawsuit in the United States District Court for the Southern District of New York, seeking rescission of the underlying agreement based on allegations of fraudulent inducement.[26] The district court stayed the lawsuit holding that Prima Paint's claims of arbitrability must be decided by the arbitrator.[27] The United States Supreme Court reviewed and upheld this decision, stating:

> In the present case no claim has been advanced by Prima Paint that F & C fraudulently induced it to enter into the agreement to arbitrate '(a)ny controversy or claim arising out of or relating to this Agreement, or the breach thereof.' This contractual language is easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement itself were procured by fraud. Indeed, no claim is made that Prima Paint ever intended that 'legal' issues relating to the contract be excluded from arbitration, or that it was not entirely free so to contract. Federal courts are bound to apply rules enacted by Congress with respect to matters—here, a contract involving commerce—over which it has legislative power. The question which Prima Paint requested the District Court to adjudicate preliminarily to allowing arbitration to proceed is one not intended by Congress to delay the granting of a [section] 3 stay.[28]

---

[23] *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 75; *Preston*, 552 U.S. at 353; *Buckeye Check Cashing, Inc.*, 546 U.S. at 448; *Prima Paint Corp.*, 388 U.S. at 398.
[24] *Prima Paint Corp.*, 388 U.S. at 397–98.
[25] *Id.* at 398.
[26] *Id.*
[27] *Id.*

In *Buckeye Check Cashing, Inc. v. Cardegna*, the Court elaborated on its holding in Prima Paint to delineate a clear and concise rule for determining who—the court or the arbitrator—should determine the gatekeeper issues of arbitrability. In that case, John Cardegna and Donna Reuter entered into a series of financing agreements with Buckeye Check Cashing, Inc., which contained the following arbitration provision:

> 1. *Arbitration Disclosure* By signing this Agreement, you agree that i[f] a dispute of any kind arises out of this Agreement or your application therefore or any instrument relating thereto, th[e]n either you or we or third-parties involved can choose to have that dispute resolved by binding arbitration as set forth in Paragraph 2 below . . . .
>
> 2. *Arbitration Provisions* Any claim, dispute, or controversy ... arising from or relating to this Agreement ... or the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement (collectively 'Claim'), shall be resolved, upon the election of you or us or said third-parties, by binding arbitration . . . . This arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ('FAA'), 9 U.S.C. Sections 1–16. The arbitrator shall apply applicable substantive law constraint *[sic]* with the FAA and applicable statu[t]es of limitations and shall honor claims of privilege recognized by law . . . .[29]

Cardegna and Reuter brought a putative class-action lawsuit in a Florida state court, seeking a declaration that the underlying financing agreements were void because they charged usurious interest and violated various state lending laws.[30] The Court recognized that challenges to the validity of arbitration agreements could be divided into two types: (1) challenges specifically to the validity of the agreement to arbitrate; or (2) challenges to the contract ***as a whole***.[31] The Court continued to state that, although courts may decide challenges specifically to

---

[28] *Id.* at 407–08.
[29] *Buckeye Check Cashing, Inc.*, 546 U.S. at 442–43.
[30] *Id.* at 443.
[31] *Id.* at 444.

9

the validity of the agreement to arbitrate, it is bound by the FAA to abstain from deciding challenges to the contract ***as a whole***.[32] Cardegna and Reuter's claims that the underlying finance agreements were void due to usury and violation of various state lending laws, like Prima Paint's claims of fraudulent inducement, sought to void the contract ***as a whole***.[33] Accordingly, the Court could not decide Cardegna and Reuter's claims and held that Cardegna and Reuter must assert those claims arbitration.[34]  As a final comment, the Court directly addressed the policy underlying this rule, stating:

> It is true, as respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions. We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract ***as a whole***, and not specifically to the arbitration clause, must go to the arbitrator.[35]

Without belaboring an established point, it is also worth noting that the United States Supreme Court has since has reaffirmed this holding in at least two additional published opinions.[36]

In the instant case, Waco clearly seeks to challenge the validity of the Agreement in its entirety and not just the Arbitration Provision.[37] Waco's claims such of duress and fraudulent inducement, as well as its vague assertion that some other portion of the Agreement was

---

[32] *Id.* at 445.
[33] *Id.* at 444.
[34] *Id.* at 448–49.
[35] *Id.* at 448–49 (emphasis added).
[36] *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 75; *Preston*, 552 U.S. at 353;
[37] *See* Pl.'s Compl. For Declaratory Judgment [Doc. # 1].

altered,[38] cannot realistically be applied to attack only a single provision of the Agreement. Rather, they are each claims that, if true, would invalidate the Agreement ***as a whole***.

Moreover, Waco's Complaint makes clear on its face that Waco is seeking to challenge the validity of the Agreement ***as a whole***:

39.

***The Agreement is invalid and unenforceable*** due to the actions of Heartwise's agent, Malla, who inserted provisions that materially altered the Agreement without the knowledge or consent of Waco and Dr. Kirk.[39]

40.

Further, ***the Agreement is invalid and unenforceable*** due to the actions of Heartwise's agent, Malla, who induced Dr. Kirk to execute the Agreement under duress.[40]

41.

As a result of the actions of Heartwise's agent, Malla, Waco and Dr. Kirk are ***entitled to entry of a declaratory judgment declaring that the Agreement is invalid, in its entirety, including but not limited to*** the "Dispute Resolution" provision in Section 13.4 of the Agreement.[41]

As a result, Waco's claims are no different than those asserted by Prima Paint, Cardegna, and Reuter. Waco's claims must be decided by an arbitrator, and the Court is bound by the FAA and established Supreme Court precedent to compel these claims to arbitration.

### B. WACO'S REQUEST THAT THE COURT GOVERN THE PROCEDURE BY WHICH THE ARBITRATION IS CONDUCTED FAILS AS A MATTER OF LAW.

Waco's alternative claim that the Court should somehow govern the procedure by which the AAA conducts the Arbitration by ordering separate arbitration proceedings to be held seeks

---

[38] *Id.* at ¶24 (claiming the insertion of additional terms but failing to specify which terms Waco claims were added).
[39] *Id.* at ¶39 (emphasis added).
[40] *Id.* at ¶40 (emphasis added).
[41] *Id.* at ¶41 (emphasis added).

relief to which it is not legally entitled. Waco's request is without merit because its own attorney actively participated in the Arbitration while representing a party with an identical position. But this Court need not even reach such an analysis of the merits because Waco cites no authority allowing the Court to exercise such broad and overreaching judicial control of a distinctly extra-judicial process. In fact, the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have both uniformly and explicitly held that once a court holds that a claim must be submitted to arbitration, it cannot address or direct any procedural component of that arbitration.[42] Accordingly, the Court is bound to dismiss Waco's alternative claim and allow the AAA arbitration panel to direct the procedure of the Arbitration free from interference.

C. **THE COURT SHOULD DISMISS WACO'S CLAIMS WITH PREJUDICE TO REFILING.**

The Court should dismiss all of Waco's claims with prejudice to refiling because they must all be submitted to arbitration. Section 3 of the FAA directs courts to "stay" all judicial action in an arbitrable case and compel the parties to submit their claims to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[43]

---

[42] *John Wiley & Sons, Inc.*, 376 U.S. at 557 ("Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Smith Barney Shearson, Inc.*, 47 F.3d at 753–54 (finding that a party's claim that arbitration was time-barred was a proper dispute regarding arbitration procedure for the arbitrator where rules regarding timeliness were incorporated into the agreement to arbitrate and the parties agreed to have any dispute between them resolved by arbitration) (other citations omitted)).

[43] 9 U.S.C. § 3.

However, despite the statute's use of the term "stay," courts have consistently held that dismissal is proper when all issues should be submitted to arbitration.[44] Accordingly, although it is within this Court's discretion to simply abate the case and retain jurisdiction over Waco's claims pending completion of the Arbitration, this Court likewise maintains discretion in the interest of judicial economy to dismiss these claims with prejudice to refiling.

## V.  CONCLUSION & PRAYER

This Court should dismiss this lawsuit and compel arbitration because Waco's arguments and factual allegations seek to attack the validity of the Agreement **_as a whole_**, and not just the arbitration provision that it contains. Accordingly, this Court is bound by the provisions of the FAA and established Supreme Court precedent to dismiss these claims and compel the parties to submit them to arbitration. Waco can likewise not ask this Court to dictate the procedure by which the AAA can conduct the Arbitration. As a result, the Court must abstain from ruling on all of Waco's claims and should dismiss them with prejudice to refiling in the interest of judicial economy.

---

[44] *Rent-A-Ctr., W., Inc.*, 561 U.S. at 75 (reversing in favor of upholding the trial court's dismissal); *Alford*, 975 F.2d at 1165 (stating that dismissal, as opposed to a stay pending arbitration, is proper "when all of the issues raised in the district court must be submitted to arbitration"); *Aviles*, 559 Fed. Appx. at 415 (citing *Alford* to reach the same conclusion).

Respectfully Submitted,

*/s/ J. Geoffrey Ormsby*
**RANDALL A. SMITH (No. 2117)**
**J. GEOFFREY ORMSBY, T.A. (No. 24183)**
**MARY NELL BENNETT (No. 32339)**
    -OF-
**SMITH & FAWER, L.L.C.**
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205
gormsby@smithfawer.com
mnbennett@smithfawer.com

*Counsel for Defendant, Heartwise Clinic, LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on March 16, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                   */s/ J. Geoffrey Ormsby*